# EXHIBIT #1



MARKO LAW

JONATHAN R.MARKO | jon@ernstmarkolaw.com
TYLER JOSEPH | tylerjoseph@ernstmarkolaw.com
STEPHEN LOVELL | stephen@ernstmarkolaw.com

ERNSTMARKOLAW.COM                                    P. (313) 965-5555    F. (313) 965-5556

**April 30, 2018**

<u>**SENT VIA EMAIL**</u>
Shelby Township Police Department
ATTN: Records Bureau
52530 Van Dyke
Shelby Township, MI 48316
records@shelbytwp.org

      RE: *FOIA REQUEST- John Kelmendi*

To Whom It May Concern:

Pursuant to Michigan's Freedom of Information Act (FOIA), MCL 15.321 et seq., I am requesting a copy of any and all documents, including records, reports, logs, correspondence, journal entries, e-mails, faxes, medical records, videos, orders, warrants, court records or any other documentation of any kind pertaining to Mr. John Kelmendi's arrest, on or about January 12, 2018. In addition to the police report from the arrest, we are also requesting any notes, reports, orders, warrants, etc. regarding the Shelby Township Police Department's purpose at the place of his arrest. Mr. Kelmendi, who was at his father's house at the time of his arrest, was told that the police were at the home to pick up property belonging to his ex-wife.

Pursuant to FOIA, I request that you waive all fees associated with searching for and copying these documents/videos, as this is a matter of public interest.

If you decide that any of these documents or videos are exempt from disclosure under FOIA, I ask that you exercise your discretion to disclose the information because of the public's strong interest in making sure that individual civil rights are not violated. If you claim an exemption and deny my request in whole or in part, you must provide me with factually based reasons for your decision.

I will appeal any claim of exemption to the highest authority. Please provide me with the name, title, and mailing address of whom I should send such an appeal. I also have the right to appeal any claim of exemption to the circuit court and to recover attorney fees and costs if the court orders you to comply with my request.

Furthermore, if you deny my request for any video or investigation reports that include Mr. Kelmendi, I am requesting that you do not destroy any materials until the matter is resolved.

THE PENOBSCOT BUILDING
645 GRISWOLD STREET, SUITE 4100
DETROIT, MICHIGAN 48226

MID MICHIGAN OFFICE:
600 EAST BROADWAY, SUITE 101
MOUNT PLEASANT, MI 48858

I will expect your response to my request within five business days. Thank you.

Sincerely,

Kirstina R. Magyari
Law Clerk
**MARKO LAW, PLC**
645 Griswold Street, Suite 4100
Detroit, Michigan 48226
Phone: 313.965.5555
Fax: 313.965.5556
Email: referrals@ernstmarkolaw.com

# EXHIBIT #2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN KELMENDI and TOM DJONOVIC
as Personal Representative of the Estate of
PRELA DJONOVIC,                                    Case No. 2:20-cv-12354
                                                   Hon. Denise Page Hood
          Plaintiffs,                              Mag. Judge R. Steven Whalen

vs.

SHELBY TOWNSHIP OFFICERS T. HOGAN,
JOHN DOE 1, JOHN DOE 2, JOHN DOE 3,
JOHN DOE 4, JOHN DOE 5, JOHN DOE 6,
in their individual capacities, and THE CHARTER
TOWNSHIP OF SHELBY, Jointly and Severally,

          Defendants.
                                                                          /

| ERNST CHARARA & LOVELL, PLC | KIRK, HUTH, LANGE & BADALAMENTI, PLC |
|---|---|
| By:  STEPHEN M. LOVELL (P80921) | By: ROBERT S. HUTH, JR. (P42531) |
| Attorneys for Plaintiffs | RAECHEL M. BADALAMENTI (P64361) |
| 645 Griswold, Ste. 4100 | Attorneys for Defendants |
| Detroit, MI 48226 | 19500 Hall Road, Suite 100 |
| (313) 965-5555 | Clinton Township, MI 48038 |
| stephen@ecllawfirm.com | (586) 412-4900      Fax: (586) 412-4949 |
|  | rhuth@KirkHuthLaw.com |
|  | rbadalamenti@KirkHuthLaw.com |
                                                                          /

## **DEFENDANTS' FRCP 26(a)(1) INITIAL DISCLOSURES**

Now Come Defendants The Charter Township of Shelby, Shelby Township

Police Officer T. Hogan, and the John Doe Defendants (collectively hereinafter

"Defendants"), by and through their attorneys, Kirk, Huth, Lange & Badalamenti,

PLC, and pursuant to Federal Rule of Civil Procedure 26(a)(1), makes the following

disclosures:

A. **Witnesses**

    **1.  John P. Kelmendi, c/o Stephen Lovell, Esq.;**

Kelmendi is a plaintiff in his (alleged) capacity as co-personal representative of the Estate of Prela Djonovic and may have personal knowledge of the claims and defenses asserted in this case.

    **2.  Tom Djonovic, c/o Stephen Lovell, Esq.;**

Djonovic is a plaintiff in his (alleged) capacity as co-personal representative of the Estate of Prela Djonovic and may have personal knowledge of the claims and defenses asserted in this case.

    **3.  The Estate of Prela Djonovic, c/o Stephen Lovell, Esq.;**

The Estate of Prela Djonovic is a named plaintiff in this case and would be expected to have knowledge of the claims and defenses asserted in this case.

    **4.  Defendant Shelby Township Police Officer T. Hogan, c/o Raechel Badalamenti, Esq.;**

Defendant Shelby Township Police Officer T. Hogan is a named Defendant in this case and would be expected to have knowledge of the claims and defenses asserted in this case;

    **5.  Past and/or present employees, officers, representatives, and/or records custodians of the Charter Township of Shelby, c/o Raechel Badalamenti, Esq. including but not limited to:**
        **i.  Records Custodian Wendy Davis;**

The Charter Township of Shelby is a named-Defendant in this case and, thus, these individuals may have knowledge of the claims and defenses asserted in this case.

    **6.  Past and/or present employees, officers, representatives, and/or records custodians of Shelby Township Police Department (expert and/or lay), c/o Raechel Badalamenti, Esq. including but not limited to:**
        **i.  Shelby Township Police Evidence Technician Officer Dowty;**
       **ii.  Shelby Township Police Detective Beth Walsh;**

    iii.  **Shelby Township Police Officer Gammicchiaa;**
    iv.  **Shelby Township Police Officer Burnard;**
    v.  **Shelby Township Police Officer Haughee;**
    vi.  **Shelby Township Police Officer Carrie Mickey;**
    vii.  **Shelby Township Police Officer Oneal;**
    viii.  **Shelby Township Police Sgt. Bellemo; and**
    ix.  **Shelby Township Police Lt. Daniel;**

These individuals may have been present during, in whole or in part, the incident that is the subject matter of Plaintiff's complaint, other related incidents involving Plaintiff and the Shelby Township Police Department, and/or have personal knowledge of the events leading up to or transpiring after those incidents.

### 7. Ljiljana Djonovic, 8895 24 Mile Rd., Shelby Twp., Michigan;

Ljiljana Djonovic may have been present during, in whole or in part, the incident that is the subject matter of Plaintiff's complaint and/or may have personal knowledge of the events leading up to or transpiring after the incident.

### 8. Ljiljana Djonovic's sister;

Ljiljana Djonovic's sister may have been present during, in whole or in part, the incident that is the subject matter of Plaintiff's complaint and, thus, may have knowledge of facts related to the claims and defenses asserted in this case.

### 9. Defendant Bruno Pacito, c/o Armand Velardo, Esq.;

Pacito was a named Defendant in *Kelmendi v. Walsh*, et. al., United States District Court for the Eastern District of Michigan Case No. 2:17-cv-12325-GCS-RSW.

### 10. Defendant Steve Klein-Knecht, c/o Armand Velarado;

Klein-Knecht was a named Defendant in *Kelmendi v. Walsh*, et. al., United States District Court for the Eastern District of Michigan Case No. 2:17-cv-12325-GCS-RSW.

### 11. Defendant Robert Sizemore, c/o Lawrence Garcia, Esq.;

Sizemore was a named Defendant in *Kelmendi v. Walsh*, et. al., United States District Court for the Eastern District of Michigan Case No. 2:17-cv-12325-GCS-RSW.

12. **Past and/or present employees, officers, representatives, and/or records custodians of Defendant DTE Energy Company c/o Lawrence Garcia, Esq.;**

Past and/or present employees, officers, representatives and/or records custodians of DTE Energy Company may have been present during, in whole or in part, the incident that was the subject matter of Plaintiff's Complaint in *Kelmendi v. Walsh*, et. al., United States District Court for the Eastern District of Michigan Case No. 2:17-cv-12325-GCS-RSW.

13. **Officer Mike Strong, 51600 Van Dyke, Shelby Township, MI 48316;**

Officer Strong is a 41-A District Court Officer and may have knowledge of the claims and defenses asserted in *Kelmendi v. Walsh*, et. al., United States District Court for the Eastern District of Michigan Case No. 2:17-cv-12325-GCS-RSW.

14. **(Former) Macomb County Chief Assistant Prosecuting Attorney James Langtry;**

(Former) Macomb County Chief Assistant Prosecutor James Langtry, on information, authorized the deviation request for 41st District Court Case No. 14-1183-SM, which involved Kelmendi.

15. **Macomb County Assistant Prosecuting Attorney Corey Newman;**

APA Newman, on information, prosecuted the 41st District Court Case No. 14-1183-SM against Kelmendi.

16. **Elbert L. Hatchett, Esq., 485 Orchard Lake Road, Pontiac, MI 48314;**

Mr. Hatchet contacted the Macomb County Prosecuting Attorney's office on behalf of Mr. Kelmendi on January 26, 2015 regarding the incident that forms the basis of the Complaint in *Kelmendi v. Walsh*, et. al., United States District Court for the Eastern District of Michigan Case No. 2:17-cv-12325-GCS-RSW.

17. **Marlon Gibson, 1226 S. Ethel Street, Detroit, MI 48217;**

Mr. Gibson may have knowledge concerning the accuracy of documents from pending and/or resolved cases in the 41st District Court Case No. 14-1183-SM, captioned *State of Michigan v. John Kelmendi*.

**18. Past and/or present employees, officers, representatives, and/or records custodians of Bread Basket Restaurant;**

These individuals may have knowledge concerning the accuracy of documents from pending and/or resolved cases in the 41st District Court Case No. 14-1183-SM, captioned *State of Michigan v. John Kelmendi*.

**19. Past and/or present employees, officers, representatives, and/or records custodians of C&S Auto;**

These individuals may have knowledge concerning the accuracy of documents from pending and/or resolved case in the 41st District Court Case No. 14-1183-SM, captioned *State of Michigan v. John Kelmendi*.

**20. Macomb County Assistant Prosecuting Attorney Heather Odgers;**

APA Odgers, on information, authorized a warrant against Plaintiff John Klemendi on or about June 16, 2014.

**21. Past and/or present employees, officers, representatives, and/or records custodians of the 41st District Court of Michigan;**

These individuals may have knowledge concerning the accuracy of documents from pending and/or resolved cases in the 41st District Court of Michigan arising from the incident involving Kelmendi on June 4, 2014.

**22. Past and/or present employees, officers, representatives and/or records custodians of the United States District Court for the Eastern District of Michigan;**

These individuals may testify to the authenticity of publicly available documents filed in *Kelmendi v. Walsh*, et. al., United States District Court for the Eastern District of Michigan Case No. 2:17-cv-12325-GCS-RSW.

**23. Past and/or present employees, officers, representatives, and/or records custodians of Macomb County Prosecutor's Office, including**

**but not limited APA Corey Newman, Esq., Former Chief Assistant Prosecuting Attorney James Langtry, Esq. and APA Heather Odger, Esq.;**

These individuals prosecuted John Kelmendi in relation to criminal proceedings arising from an incident involving City of Warren Police on June 4, 2014.

**24.Past and/or present employees, officers, representatives, and/or records custodians of the Macomb County Medical Examiner's Office;**

These individuals, to be identified at a later date and throughout discovery, may have knowledge regarding Plaintiffs medical history, alleged injuries and/or death.

**25.Any and all medical providers, counselors, therapists and other professionals, who in any way treated, examined, evaluated, or consulted Plaintiffs, as well as their past and/or present employees, representatives, and/or records custodians;**

These individuals, to be identified at a later date and throughout discovery, may have knowledge regarding Plaintiffs medical history,alleged injuries and/or death.

**26.Past and/or present employees, representatives, and/or records custodians of past and/or present employers of Plaintiffs;**

These individuals may have knowledge with regards to Plaintiffs alleged damages, if any.

**27.Past and/or present employees, representatives, and/or records custodians of past and/or present educational institutions attended by Plaintiffs;**

These individuals may have knowledge with regards to Plaintiffs alleged damages, if any.

**28.An expert in police department policies, procedures and customs to be identified;**

This individual, to be identified at a later date, will testify with regards to proper police department policies, procedures and customs, as well as offer an expert opinion regarding Defendants' compliance with the same.

**29. One or more medical experts, in fields to be identified;**

Medical expert(s) will offer an expert opinion regarding any physical, emotion and/or psychological injuries claimed by the Plaintiffs in this matter, if any.

**30. An expert economist to be identified**;

This individual, to be identified at a later date, will testify with regards to Plaintiffs alleged damages, if any.

**31. Record Keepers, past/present employees, agents and/or representatives of the INTERNAL REVENUE SERVICE or the Michigan Department of Treasury, with regard to Plaintiffs claims for economic damages;**

These individuals may have knowledge with regards to Plaintiffs alleged damages, if any.

**32. Record Keepers, past/present employees, agents and/or representatives of the Macomb County Circuit and Macomb County Probate Courts;**

These individuals may have knowledge regarding the Plaintiff, including but not limited to the opening of the Estate of Prela Djonovic and the alleged authority of Kelmendi and Djonovic as co-personal representatives to bring the above-captioned matter on behalf of the Estate of Prela Djonovic.

**33. Any witnesses that may become known during the course of discovery;**

**34. Any witnesses listed in the witness list(s) of Plaintiff;**

**35. Any rebuttal and/or sur-rebuttal witnesses (expert and/or lay); and**

**36. Defendants reserve the right to amend and/or supplement this List**.

## B. <u>Documents and Tangible Things</u>

1. Shelby Township Police Report 18-0001208 and attachments, including but not limited to Case Report (9 pages), Attachments Page (1 page), Ljilana Djonovic's Michigan Identification Card (1 page) and Ljiljana Djonovic's Witness Statement (2 pages) (total: 13 pages);

2. Three (3) Shelby Township Police In-Car Audio/Video Recordings for Shelby Township Police Vehicles 67, 107 and 550 relating to the incident that is the subject of Plaintiffs Complaint;

3. The policies, procedures and general orders of Shelby Township and/or its Police Department;

4. Pleadings, motions, responses and replies filed, disclosures and discovery exchanged, and orders entered in *Kelmendi v. Walsh*, et. al., United States District Court for the Eastern District of Michigan Case No. 2:17-cv-12325-GCS-RSW;

5. Shelby Township Police Report 14-15312 and attachments, including but not limited to Photos, Witness Statement(s), Request(s) for Warrant Authorization, Misdemeanor Complaint (case 14-004834), Prisoner Custody Report, and Shelby Township Police Department Bond Receipt;

6. Shelby Township Dispatch Notes for Incident 14-15312;

7. All Records, Warrants, Complaints, Affidavits and Investigation Reports from the Shelby Township Police Department related to the complaint, investigation and/or arrest of the Plaintiff that forms the basis for this action;

8. Docket and/or Register of Actions from 41st District Court re: Case No. 14-1183-SM;

9. Any and all documents and tangible things including pleadings, notices, warrants and transcripts from 41st District Court re: Case No. 14-1183-SM and 14-1184, captioned *State of Michigan v. John Kelmendi*;

10. Any and all of Plaintiffs medical records, billings, films, or other similar documents;

11. Any and all records related to the alleged death of Prela Djonovic, including but not limited to records from the Macomb County Medical Examiner's Office;

12. Any and all records related to the opening of the Estate of Prela Djonovic, authorization by the Macomb County Probate Court for this lawsuit and the probate of the Estate of Prela Djonovic;

13. Any and all of Plaintiffs records from the Macomb County Circuit Court and/or Macomb County Probate Court;

14. Any and all of Plaintiffs educational records;

15. Any and all of Plaintiffs employment records;

16. Any and all records received in response to a subpoena to Macomb County Prosecutor's Office;

17. Any and all documents and/or tangible things received by the parties in response to any and all subpoena and/or FOIA request(s); and

18. Defendants reserve the right to amend and/or supplement this Exhibit List.

## C. **Computation of Damages**

Defendants have not asserted any claims for damages against the Plaintiff.

## D. **Insurance**

On information, there is no coverage applicable to this claim. However, a liability policy with One Beacon Insurance, a division of Intact Specialty, does generally apply to the activities of the Shelby Township Police Department and its officers.

Respectfully submitted,

**KIRK, HUTH, LANGE** & **BADALAMENTI**, PLC

By:   s/ Raechel M. Badalamenti
        RAECHEL M. BADALAMENTI (P64361)
        Attorneys for Defendants
        19500 Hall Road, Suite 100
        Clinton Township, MI  48038
        (586) 412-4900  Fax:  (586) 412-4900
Dated:  January 25, 2021    rbadalamenti@KirkHuthLaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that, on January 25, 2021, she served the foregoing instrument upon all counsel of record at their respective business addresses as disclosed by the pleadings, by electronic mail.

        s/Suzanne Hurley
        Suzanne Hurley

# EXHIBIT #3

**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 12a1185n.06**

No.  11-2335

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

<table>
<tr><td>Timothy Barkovic,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>     Plaintiff-Appellant,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>**ON APPEAL** FROM THE UNITED</td></tr>
<tr><td></td><td>)</td><td>STATES DISTRICT COURT FOR THE</td></tr>
<tr><td>Terrance Hogan, Officer,</td><td>)</td><td>EASTERN DISTRICT OF MICHIGAN</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>     Defendant-Appellee,</td><td>)</td><td></td></tr>
<tr><td>and</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Township of Shelby; County of Macomb; Mark</td><td>)</td><td></td></tr>
<tr><td>Hackel, Sheriff; John Doe, Police Officer,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>     Defendants.</td><td>)</td><td></td></tr>
</table>

**BEFORE:**    **Merritt, Moore, and McKeague, Circuit Judges.**

     **MERRITT, Circuit Judge.**  In this assault case involving a police officer who allegedly

injured a lawyer, the main question is whether the dispute should go to the jury on the question of

whether the police officer was acting under color of law for purposes of 42 U.S.C. § 1983.  Timothy

Barkovic, a criminal defense lawyer, and Terrance Hogan, a police officer, had an argument that

escalated into a physical altercation in a Michigan courthouse during business hours.  Barkovic sued

Hogan under 42 U.S.C. § 1983, contending that this confrontation deprived him of his Fourth and

Fourteenth Amendment rights.  Hogan moved for summary judgment; the district court, without oral

argument, granted the motion, finding that Hogan was not acting under color of state law.  As

detailed below, there are issues of fact as to whether Hogan was acting under color of state law or purely as a private individual. Thus, in keeping with our reasoning in *Chapman v. Higbee Co.,* 319 F.3d 825 (6th Cir. 2003), this case requires a jury determination and should not be disposed of on summary judgment. We reverse and remand for further proceedings consistent with this opinion.

## I. Background

### A. The Incident

Timothy Barkovic is a Michigan criminal defense lawyer and a self-described "outspoken critic of police conduct." Def's. B. at 1. Terrance Hogan is an 11-year veteran of the Shelby Township Police Department. On March 10, 2009, the two individuals got into a verbal and physical fight in the hallway of the 41-A District Court Courthouse in Shelby Township, Michigan. Hogan pushed Barkovic into a door frame, causing injuries to Barkovic's face.

Before delving into the specific and contradictory facts of the physical assault, the history between these two men is worth mentioning. Hogan was involved in some capacity in approximately ten of Barkovic's previous cases. In the past, Hogan asked Barkovic to "stop interfering or talking" to victims in cases where Barkovic was the defense attorney. Hogan Dep. at 46-47. In his deposition, Hogan remembers at least another occasion where Barkovic approached him in court and "smacked" him inappropriately on the back. *Id.* at 49. Hogan stated, "I had other incidents in the past where I have told Mr. Barkovic just to knock it off and he has listened. So I was hoping that would be the case this time." *Id.* at 57. Hogan also stated, "For many years I have witnessed Barkovic to be disruptive, demeaning, insulting, unprofessional and often threatening to officers, prosecutors, attorneys, etc." *Id.* at 84.

On March 10, 2009, Hogan was at the courthouse, on duty, in response to a state-issued subpoena for a case in which Barkovic was the defense attorney, although Hogan was not in uniform or wearing a badge. Barkovic states that he arrived at the jury room that morning. The jury room, also known as the "prosecutor's room," is a gathering place for attorneys and police officers. The parties dispute whether this is a restricted area of the courthouse, but both agree that it is an area used for official business between defense attorneys, prosecutors, and police.

Barkovic admits that while in the jury room, he called one officer a "cockatiel," mocking his haircut, and may have referred to another officer as an "asshole." Barkovic Dep. at 175-78. Hogan said Barkovic "was disrespecting everybody in that whole room that day." Hogan Dep. at 57. Barkovic left the room after a few minutes and proceeded down the hallway. Hogan left the room shortly after. Here's where the stories differ.

Hogan claims that Barkovic, while walking down the hallway, told another officer, "Move Lurch." Hogan Dep. at 56-57. Hogan states that he then approached Barkovic and told him to "start being more professional and knock your crap off or something to that effect, knock your shit off." *Id.* Hogan claims that Barkovic responded by saying that he was going to "kick [Hogan's] ass" and called him a "punk bitch." *Id.* at 59. In response, Hogan says he told Barkovic that he was the "punk bitch." *Id.* According to Hogan, Barkovic proceeded to tell him to "fuck off" numerous times. *Id.* Hogan claimed he then turned away and that's when Barkovic pushed him from behind. Hogan states that he pushed Barkovic back and when Barkovic got closer, Hogan pushed him into the door frame.

Barkovic's version of the events characterize him as the victim and Hogan as the instigator. Barkovic states that Hogan unexpectedly approached him in the hallway and told him that he had "better shut [his] fucking mouth." Barkovic Dep. at 101. In oral argument, Barkovic's attorney contended that the "Lurch" comment, along with Barkovic's general behavior towards police officers, sparked Hogan's anger that morning. Barkovic states that the two men exchanged numerous "fuck you" curses back and forth. Barkovic Dep. at 194-95. Barkovic says he did not recognize Hogan as a police officer immediately, but once he realized who he was, told him "fuck you and your entire department." *Id.* He states that the next thing he remembers was "ending up on the floor on all fours with . . . droplets of blood hitting the plea form" he had in his hand. *Id.* at 199.

### B. The Lawsuit

One year later, Barkovic sued Hogan as well as Shelby Township, Macomb County, the Macomb County Sheriff, and various John Doe police officers. Barkovic claimed assault, battery, deprivation of civil rights under 42 U.S.C. § 1983, abuse of process, malicious prosecution, and equal protection denial. Hogan counterclaimed for assault and battery. Barkovic amended his complaint to remove requests for lost wages and earning capacity. The parties then stipulated to the dismissal of the claims against Shelby Township, Macomb County, the Macomb County Sheriff, and the John Doe officers. They also stipulated to the dismissal of the equal protection denial, abuse of process, and malicious prosecution claims against Hogan. Hogan moved for summary judgment on the remaining two claims, assault and battery and the § 1983 claim. In Hogan's motion for summary judgment, Hogan asserted that he was not acting under color of state law when he assaulted Barkovic, but rather that he was acting as a private person. In asserting the defenses of qualified

-4-

immunity in the Section 1983 action and statutory immunity for the state law claims, however, Hogan said he was acting during the course of his employment and within the scope of his authority. In addition, he stated that all of his actions were in accordance with the Shelby Township Police Department's use-of-force policy and other applicable guidelines.

The district court granted summary judgment, finding that Hogan was not acting under color of state law. The court then dismissed the state law claims of assault and battery. Barkovic timely appealed. This court remanded the case for the limited purpose of ruling on Hogan's counterclaims. On remand, the district court dismissed Hogan's counterclaims without prejudice.

The sole issue now on appeal, therefore, is whether the district court properly granted summary judgment in holding that there was no genuine issue of material fact as to whether Hogan was acting under color of state law for purposes of the § 1983 action.

## II. Analysis

### A. Standard of Review

This court reviews the district court's grant of summary judgment *de novo. Spears v. Ruth*, 589 F.3d 249, 253 (6th Cir. 2009). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby,* 477 U.S. 242, 251-52 (1986).

## B. Section 1983

42 U.S.C. § 1983 is designed to provide a federal remedy for any violation of constitutional rights by those acting under color of state law. *See, e.g., West v. Atkins*, 487 U.S. 42 (1988); *Monroe v. Pape*, 365 U.S. 167, 175-76 (1961); *Screws v. United States*, 325 U.S. 91 (1945); *United States v. Classic*, 313 U.S. 299 (1941). In *United States v. Classic*, the Supreme Court held that "misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken under color of state law." 313 U.S. at 326. In *West v. Atkins*, the Court stated that "State employment is generally sufficient to render the defendant a state actor . . . [A] defendant in a § 1983 suits acts under color of state law when he abuses the position given to him by the State. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." 487 U.S. at 50.

*Chapman v. Higbee Co.* presented a genuine issue of material fact as to whether a security officer acted under color of state law. 319 F.3d 825, 835 (6th Cir. 2003). In *Chapman*, a Dillard's security guard, who was an off-duty sheriff's deputy, wearing his official uniform, badge, and sidearm, stopped and searched the plaintiff. *Id.* at 834. The officer did not represent himself as a police officer or threaten to arrest the plaintiff, but he did initiate a strip search, which, according to Dillard's policy, required the intervention of police. *Id.* at 835. Thus, this court, describing the "color of state law" inquiry as "fact-specific" and determined on "a case-by-case basis," held that "a reasonable jury could very well find that the initiation of a strip search by an armed, uniformed sheriff's deputy constituted an act that may fairly be attributed to the state." *Id.* at 834-35 (citing

-6-

*Burton v. Wilmington Parking Auth.,* 365 U.S. 715 (1961)).  In turn, this court determined that summary judgment was inappropriate and remanded the case.  *Id.* at 835.

## C. Application

This case, like *Chapman*, presents a situation where there are "unanswered questions of fact regarding the proper characterization of the actions."  *Chapman*, 319 F.3d at 835; *see also Layne v. Sampley,*  627 F.2d 12, 13 (6th Cir. 1980).  Hogan was on duty that morning at the courthouse for official business.  In fact, the business involved one of Barkovic's cases.  Barkovic argues that Hogan was in the jury room, an area of the courthouse where he could only have been pursuant to his official duties.  The record is unclear, however, as to the exact nature of the "jury room" and whether this was a restricted area.  Additionally, the two men had previous encounters, all involving official duties rather than personal pursuits.  Hogan's anger toward Barkovic stemmed from his role as a police officer.  There is evidence that the verbal dispute resulted from Barkovic's insulting comments to other police officers that morning and that the fight escalated when Hogan felt he needed to "defend the dignity of his department."  Barkovic also claims that Hogan's status as a police officer emboldened him to assault Barkovic.

On the other hand, Hogan argues that he did not assault Barkovic pursuant to a duty given to him by the state.  He claims that he did not assert his authority as a police officer, and it is undisputed that Hogan was not in uniform or displaying a badge or a weapon.  Hogan, however, also contends in his state immunity defense that he was acting during the course of his employment and within the scope of his authority in accordance with his department's guidelines and procedures.

Thus, as in the *Chapman* case, there is a dispute of fact to be presented to the jury, and summary judgment is inappropriate.

### III. Conclusion

For the reasons given above, we **REVERSE** the district court's grant of summary judgment and **REMAND** for further proceedings consistent with this opinion.

McKEAGUE, Circuit Judge, dissenting. Summary judgment is proper here because even if Barkovic's version of events be accepted as true, there is insufficient support for the conclusion that Hogan acted under color of state law. The majority pays lip service to the correct standard—a public employee acts under color of state law when he "exercise[s] power possessed by virtue of state law and made possible only because [he or she] is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (quotations omitted). However, the majority neglects to apply this standard. The majority opinion nowhere explains how Hogan could have been exercising state-given authority when he pushed Barkovic into the doorframe. In *Chapman*, the factfinder could reasonably have concluded that the security officer was exercising state-given power because he was dressed in uniform and engaging in activities bearing a relationship to law enforcement. Hogan, on the other hand, although present in the courthouse pursuant to a subpoena and therefore on official business, was not in uniform and was clearly not acting in a law enforcement capacity or exercising any power possessed by virtue of state law when he shoved Barkovic.

The majority notes that it is unclear whether the jury room was a restricted area. So what? The altercation did not occur there; it took place in a public hallway. The majority also notes that Hogan's status as a police officer was relevant to the background relationship between the two men, but this fact is irrelevant to deciding whether Hogan was exercising state-given power when he shoved Barkovic in response to verbal insults. Finally, although Barkovic alleges that Hogan's status as a police officer "embolden[ed]" him to attack Barkovic, Barkovic cites no record support for this allegation nor any authority for the notion that it is relevant.

In the end, the factual disputes in this case are immaterial. Even under Barkovic's version of events, Hogan's actions were not made possible only because of his state-given powers. But for his official status, Hogan could still have pushed Barkovic. In my opinion, the district court properly granted summary judgment on Barkovic's § 1983 claim for excessive force in violation of his Fourth and Fourteenth Amendment rights, and Barkovic was properly left to pursue his state law remedies for assault and battery in state court. I respectfully dissent.

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|                      | 100 EAST FIFTH STREET, ROOM 540 |                          |
|----------------------|---------------------------------|--------------------------|
| Deborah S. Hunt      | POTTER STEWART U.S. COURTHOUSE  | Tel. (513) 564-7000      |
| Clerk                | CINCINNATI, OHIO 45202-3988     | www.ca6.uscourts.gov     |

Filed: November 19, 2012

Mr. Mark Roy Bendure
Bendure & Thomas
645 Griswold
Suite 4100
Detroit, MI 48226

Re: Case No. 11-2335, *Timothy Barkovic v. Terrance Hogan, et al*
Originating Case No. : 2:10-CV-10962

Dear Sir or Madam,

The Court issued the enclosed (Order/Opinion) today in this case.

Sincerely yours,

s/Bryant L. Crutcher
Case Manager
Direct Dial No. 513-564-7013

cc: Ms. Christine Delaney Anderson
Ms. Raechel M. Badalamenti
Mr. Robert S. Huth Jr.
Mr. Robert J. Seibert
Mr. David J. Weaver

Enclosure

Mandate to issue

## Barkovic v. Twp. of Shelby

United States District Court for the Eastern District of Michigan, Southern Division

May 7, 2010, Decided; May 7, 2010, Filed

Civil Action No. 10-CV-10962

**Reporter**

2010 U.S. Dist. LEXIS 44749 *

TIMOTHY BARKOVIC, Plaintiff, vs. TOWNSHIP OF SHELBY, et al., Defendants.

**Subsequent History:** Summary judgment granted by, in part, Claim dismissed by, Without prejudice, Judgment entered by Barkovic v. Twp. of Shelby, 2011 U.S. Dist. LEXIS 110659 ( E.D. Mich., Sept. 27, 2011)

**Counsel:** [*1] For Timothy Barkovic, Plaintiff, Counter Defendant: Kenneth M. Mogill, LEAD ATTORNEY, Mogill, Posner, Lake Orion, MI; Lauri R. Ellias, LEAD ATTORNEY, Ellias & Aiello, Southfield, MI.

For Township of Shelby, Defendant: Christine D. Anderson, Robert J. Seibert, Seibert and Dloski, Clinton Township, MI.

For Officer Terrance Hogan, Defendant, Counter Claimant: Robert S. Huth, Jr., Kirk and Huth, Clinton Township, MI; Robert J. Seibert, Seibert and Dloski, Clinton Township, MI.

For County of Macomb, Sheriff Mark Hackel, Police Officer John Doe, Defendants: Timothy

S. Ferrand, Cummings, McClorey, Sterling Heights, MI.

**Judges:** HON. BERNARD A. FRIEDMAN, UNITED STATES DISTRICT JUDGE.

**Opinion by:** BERNARD A. FRIEDMAN

**Opinion**

### ORDER GRANTING DEFENDANT HOGAN'S MOTION TO FILE AMENDED RESPONSIVE PLEADINGS INCLUDING VERIFIED COUNTERCLAIM

This matter is presently before the court on the motion of defendant Terrance Hogan for leave to file amended responsive pleadings including a verified counterclaim [docket entry 15]. Plaintiff has filed a response in opposition. Pursuant to E.D. Mich. LR 7.1(f)(2), the court shall decide this motion without oral argument.

This is a police misconduct action. Plaintiff alleges that on March 10, 2009, [*2] he was involved in a physical altercation at a state

district courthouse with defendant Hogan, a Shelby Township police officer. According to plaintiff, Hogan "grabbed the plaintiff and slammed him into a door frame, assaulting and seriously injuring the plaintiff." Compl. P 8. Plaintiff also alleges that false criminal charges were brought against him for assault and battery. *See id*. PP 33, 38. Plaintiff asserts claims against Hogan, other unnamed officers, Shelby Township, Macomb County and the Macomb County Sheriff for assault, battery, deprivation of constitutional rights, abuse of process, malicious prosecution, and defamation.

Hogan and Shelby Township jointly responded to the complaint on March 30, 2010, by filing an answer and affirmative defenses [docket entry 9]. On April 23, 2010, new counsel entered an appearance separately for Hogan and, simultaneously, filed the instant motion [docket entries 14, 15]. The motion seeks leave to file a counterclaim that asserts state-law claims against plaintiff for assault and battery arising from the March 10, 2009, incident.

In opposing the motion plaintiff argues that the motion is late, that the proposed amendment would be "confusing [*3] and difficult for a jury to resolve" as it "has different standards," that defendant should pursue his counterclaim separately in state court, and that subject

matter jurisdiction is lacking.

Under *Fed. R. Civ. P. 15(a)(2)*, amendments to pleadings before trial are permitted by consent or by leave of court, and "[t]he court should freely give leave when justice so requires. The Supreme Court held in *Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)*, that leave to amend should be granted "[i]n the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." The Sixth Circuit has adopted a "liberal policy of permitting amendments to ensure the determination of claims on their merits." *Shell v. Marks, 830 F.2d 68, 69 (6th Cir. 1987)*.

In the present case, all of plaintiff's reasons for opposing the requested amendment are frivolous. First, there was no "undue delay" in filing the motion. Hogan was served with process on March 16, 2010. He answered on March 30, [*4] 2010. New counsel entered an appearance for Hogan and filed the instant motion on April 23, 2010. No legitimate argument can be made that Hogan's motion is "belated" or that he has waived his right to the requested relief. *See* Pl.'s Answer in Opp. PP

3, 4.

Second, it is absurd for plaintiff to suggest that Hogan's assault and battery claims will confuse the jury because they "sound[] only in state law, which has different standards, . . . ." Pl.'s Br. first paragraph. The court directs plaintiff's attention to Count I of his complaint, where he asserts a state-law claim for "assault and battery." If the jury is not confused by plaintiff's claim, it will not be confused by the counterclaim.

Third, the availability of another forum for Hogan's counterclaim is irrelevant. The relevant factors in deciding a motion for leave to amend were identified in *Foman*.

Finally, plaintiff's jurisdictional challenge is misguided. Under *28 U.S.C. § 1367(a)*, the court has "supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy . . . ." Therefore, "if a federal court has jurisdiction [*5] over plaintiff's claim, it also will have jurisdiction over a counterclaim that arises from the same transaction or occurrence." 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1414, pp. 102-103 (1990 & 2009 Supp.). This test is obviously met in the present case, as Hogan's counterclaim and plaintiff's complaint arise from the identical incident. Accordingly,

IT IS ORDERED that defendant Hogan's motion for leave to file amended responsive pleadings including a verified counterclaim is granted. Hogan may file his proposed counterclaim within ten (10) days of the date of this order.

DATED: May 7, 2010

/s/ Bernard A. Friedman

BERNARD A. FRIEDMAN

UNITED STATES DISTRICT JUDGE

---

*End of Document*

# EXHIBIT #4

**Watch Live**

# Detroit's Craig excoriates Shelby Township police chief, says he should be fired for inflammatory posts

**Published** June 12, 2020 | Detroit | FOX 2 Detroit

Detroit Police Chief James Craig said he's not just disturbed, but angry over inflammatory social media posts made by the Shelby Township police chief.

Speaking to FOX 2 Thursday evening, Craig believes the Chefe Robert Shelide should be fired tweets that many say glorify police brutality.

"There is that whole adage of tone set from the top, so if this how he feels, how does the men and women in his department feel?" Craig asked

Sponsored Links

**Thinking about refinancing your mortgage? Start here.**
NerdWallet NMLS ID# 1617539

"If he can just publically and blatantly make statements like that, he is a disappointment to myself and all of my colleagues across this country that wears the badge of chief of police."

On June 4, Shelide made multiple posts from his personal Twitter account stating in one he wanted to "Unleash real cops and let them take care of these barbarians." In another post, the chief called a group of protesters "wild savages. I wish to God I would have been there. Body Bags for these vicious subhumans."

Shelide was adding commentary to the mass protests that have unfolded over the last two weeks in the wake of the killing of George Floyd. After a former

9/28/21, 2:06 PM    Detroit's Craig excoriates Shelby Township police chief, says he should be fired for inflammatory posts

Case 2:20-cv-12354-DPH-RSW ECF No. 29-1, PageID.273 Filed 01/07/22 Page 32 of 33

photojournalist took screenshots of the posts and put them online, the public backlash against the police chief was swift.

**Detroit Police Chief James Craig thinks Shelby Chief should be fired for tweets**

After tweets promoting police brutality by Shelby Twp Chief Robert Shelide, DPD Chief James Craig and Pastor Maurice Harwick think he should lose his job.

The police department placed Shelide on administrative leave as it investigates the incident. The chief did issue a written apology after the posts found their way back to him and promised to cooperate with the investigation.

"While an apology is insufficient and an insult to the gravity of my comments I humbly and respectfully ask for the courtesy of forgiveness to those I have offended - to my department and more importantly to those I am sworn to serve. My record speaks to the commitment and professionalism that I have exhibited for more than 30 years without incident, both of which were compromised by my emotion. During my administrative leave issued by the department, I will fully cooperate with the investigation, and seek the support and counsel necessary to ensure that my behavior and comments going forward more accurately reflect my character and person."

**RELATED: Shelby Twp police chief on leave after tweets promoting police brutality**

It's unclear when the investigation will wrap up. There are recent cases of police chiefs, officers, and corrections officials being fired over improper actions amid the protests that have descended on cities around the country. First, there were the four officers part of the Minneapolis Police Department that were involved in Floyd's death. Officers that pulled two college students from their car have been dismissed. A New Jersey jail worker was fired after photos appeared to show him mocking the death of Floyd.

The police chief in Louisville was also dismissed after an officer-involved shooting took place and none of the deputies had their body cameras turned on.

Ad Content by Taboola |

**Why American Dog Owners Are Ditching Kibble For This**

Sponsored | The Farmer's Dog

**8 Steps to Creating a Project Timeline**

Sponsored | Lucidchart

This material may not be published, broadcast, rewritten, or redistributed. ©2021 FOX Television Stations