UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN KELMENDI and TOM
DJONOVIC, as Personal Representative
of the Estate of PRELA DJONOVIC,

     Plaintiffs,

v.

T. HOGAN and CHARTER TOWNSHIP
OF SHELBY,

     Defendants.

_____/

Case No. 2:20-cv-12354
District Judge Mark A. Goldsmith
Magistrate Judge Kimberly G. Altman

### REPORT AND RECOMMENDATION ON DEFENDANTS' (1) MOTION TO DISMISS OR BAR CLAIMS OF INJURY/DEATH AND MEDICAL TESTIMONY (LAY AND EXPERT) AS DISCOVERY SANCTION OR, IN THE ALTERNATIVE, TO COMPEL SIGNED AUTHORIZATIONS, STAY CASE, AND EXTEND SCHEDULING ORDER (ECF No. 86) AND (2) MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT (ECF No. 88) AND (3) MOTION TO STRIKE (ECF No. 95)[1]

I.     Introduction

This is a civil rights case under 42 U.S.C. § 1983.  In the amended

---

[1] Upon review of the motions, the undersigned deems these matters appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

complaint,[2] plaintiffs John Kelmendi (Kelmendi) individually and Tom Djonovic (Tom) as personal representative of the Estate of Prela Djonovic (Prela or the Estate),[3] assert claims arising under the Fourth and Fourteenth Amendments against Terrance Hogan (Hogan)[4] as well as a *Monell* claim against the Charter Township of Shelby (Shelby Township).  In broad terms, plaintiffs allege that Hogan and other Shelby Township police officers illegally entered Prela's home and used excessive force against Prela and Kelmendi.  Prela allegedly died from the injuries that he sustained during this incident.  *See* ECF No. 8.  All pretrial matters have been referred to the undersigned.  (ECF No. 85).

Before the Court are three motions filed by defendants, two of which are dispositive.  First, on February 8, 2024, defendants filed a motion to dismiss or bar claims of injury/death and medical testimony (lay and expert) as a discovery sanction or, in the alternative, to compel signed authorizations, stay the case, and extend the scheduling order.  (ECF No. 86).  Second, on March 5, 2024, before the

---

[2] At the time of the filing of the original and amended complaints, plaintiffs were represented by counsel.  However, almost two years into the case, plaintiffs' counsel filed a motion to withdraw, (ECF No. 44), which was granted about six months later, (ECF No. 55).  Plaintiffs have been proceeding *pro se* since February 27, 2023.

[3] Individuals sharing the same last name will be referred to by their first names.

[4] Plaintiffs' claims against various John Does have been dismissed since the filing of the amended complaint.  (ECF No. 38).

February motion could be fully briefed and decided, defendants filed a motion to dismiss and/or for summary judgment. (ECF No. 88). Alongside that motion, defendants filed a motion for leave to file exhibits in the traditional manner, (ECF No. 89), which the undersigned granted on March 7, 2024. On March 18, 2024, plaintiffs filed a response to the motion for leave. (ECF No. 94). Finally, on March 25, 2024, defendants filed a motion to strike plaintiffs' response. (ECF No. 95).

For the reasons that follow, it is RECOMMENDED that defendants' first motion be GRANTED to the extent that it requests dismissal as a discovery sanction and defendants' second motion be either DENIED AS MOOT or GRANTED. Additionally, it is recommended that defendants' third motion be DENIED AS MOOT. If these recommendations are adopted, this case will be dismissed in its entirety.

## II.    Background

### A.    Underlying Incident

This case arises out of a conflict that occurred between plaintiffs and Shelby Township police officers at Prela's home at which Tom and Kelmendi also lived. (Liljana Djonovic Deposition, ECF No. 88-3, PageID.1522; John Kelmendi Deposition, ECF No. 88-8, PageID.1605). Prela is the father of Tom and Kelmendi. (ECF No. 88-3, PageID.1522, 1524; ECF No. 88-8, PageID.1605).

1.      Defendants' Version of Events

The following summarization includes information from the relevant police report and depositions from Liljana Djonovic (Liljana) and the officers present during the incident, all of which was attached to defendants' motion papers. In addition to this written evidence, defendants also submitted video and audio evidence to the Court. (ECF Nos. 88-11, 88-13, 88-14). The video evidence consists of three different dashcam recordings that did not capture much of the underlying incident. The audio evidence captured some of the verbal interactions between the various individuals involved. To the extent that they can be understood, the audio recordings are materially consistent with the police report and depositions from Liljana and the officers present during the incident.

In brief, during the late afternoon of January 12, 2018, officers received a request from Liljana to help her retrieve items from the home. (Police Report, ECF No. 88-2, PageID.1507-1509; ECF No. 88-3, PageID.1523). At the time, Liljana was Tom's wife and she reported to the officers that Tom had kicked her out of the home the day prior. (ECF No. 88-2, PageID.1509). Tom took Liljana's phone and dropped her off at her sister's house without any of her personal items, including clothing and documents. (*Id.*, PageID.1509). Both Liljana and her sister were afraid to enter plaintiffs' home without police officers present because Tom had threatened to "kill anyone that came to the house." (*Id.* (capitalization

modified)).  Liljana also testified that she was afraid of Tom because "he was [a] controlling person and weird."  (ECF No. 88-3, PageID.1523).

Officers Gammicchia, Hogan, Jordan Haughee (Haughee), Albert O'Neal (O'Neal), and Sergeant Jeffrey Bellomo (Bellomo) responded to Liljana's call and went to plaintiffs' home.  (ECF No. 88-2, PageID.1509).  According to Bellomo and Hogan, none of the officers were armed with AR-15s or shotguns; they were only wearing their standard equipment.  (Jeffrey Bellomo Deposition, ECF No. 88-5, PageID.1555; Terrance Hogan Deposition, ECF No. 88-6, PageID.1575-1576).

Upon the officers' arrival at the home, Gammicchia knocked on the front door and the door was opened by Tom, who stated that Liljana did not live in the home and did not have any belongings there.  (ECF No. 88-2, PageID.1509; ECF No. 88-3, PageID.1524; ECF No. 88-5, PageID.1552; ECF No. 88-6, PageID.1576).  Tom shut the door, Gammicchia knocked again, and when Tom reopened the door, Gammicchia explained that Liljana did not want to stay in the home but needed to get her clothes and documents.  (ECF No. 88-2, PageID.1509; ECF No. 88-5, PageID.1552; ECF No. 88-6, PageID.1576).  Tom refused the request and shut the door again.  (ECF No. 88-2, PageID.1509).  Shortly thereafter, Kelmendi opened the door and informed the officers that Liljana did not live in the home as she had moved out the day before.  (*Id.*; ECF No. 88-3, PageID.1524; ECF No. 88-5, PageID.1552).

Officers looked at Liljana's Michigan identification card and noted that plaintiffs' home address was the one listed on Liljana's card. (ECF No. 88-2, PageID.1509-1510). Officers asked Liljana again if she lived in the home, and she responded that she did, but that she only wanted to gather some belongings from the home. (*Id.*, PageID.1510). They then asked her if they had her permission to enter the home. (*Id.*, PageID.1510). She answered affirmatively. (*Id.*).

When the officers and Liljana entered the home, Kelmendi objected. (*Id.*). Kelmendi then bumped into Hogan, who "advised him to not touch him and to back up." (*Id.* (capitalization modified)). Kelmendi then began accusing Hogan of pushing him and demanding his name. (*Id.*). Hogan denied pushing Kelmendi but stated that he did lightly place his hand on Kelmendi's shoulder while advising him to back up. (*Id.*, PageID.1511; ECF No. 88-6, PageID.1578-1579). Both Haughee and Liljana also indicated that they never saw Hogan push Kelmendi. (ECF No. 88-2, PageID.1511-1512).

Prela was standing behind Kelmendi when the officers entered the home. (ECF No. 88-6, PageID.1576). Hogan did not see anyone touch Prela. (*Id.*, PageID.1579).

Tom was holding his and Liljana's small, crying child while screaming at the officers to get out of his home. (*Id*, PageID.1576; ECF No. 88-2, PageID.1511). Tom then approached and bumped into Liljana, and Hogan warned

6

him not to touch Liljana again. (ECF No. 88-2, PageID.1511; ECF No. 88-6, PageID.1579). Tom also refused to allow Liljana to comfort the child. (ECF No. 88-2, PageID.1511; ECF No. 88-3, PageID.1526). When Liljana attempted to go upstairs, Tom stood blocking her way, and only moved just enough to allow her to pass when officers instructed him to get out of the way. (ECF No. 88-2, PageID.1511; ECF No. 88-6, PageID.1579).

While Kelmendi and Tom continued objecting to the officers' presence, Hogan and Haughee escorted Liljana upstairs to gather her belongings. (ECF No. 88-2, PageID.1510). Hogan watched Liljana put women's clothing in a suitcase. (*Id.*, PageID.1511). Liljana did not grab all of her belongings because she was afraid of all the yelling coming from Prela, Tom, and Kelmendi. (ECF No. 88-3, PageID.1525). A few minutes later, they returned downstairs with Liljana carrying a suitcase. (ECF No. 88-2, PageID.1510). The officers and Liljana then departed. (*Id.*).

A short time later, Kelmendi arrived at the Shelby Township police station demanding to speak to the shift supervisor. (*Id.*, PageID.1514; ECF No. 88-5, PageID.1555). The shift supervisor at the time was Lieutenant Daniel who took Kelmendi into an interview room to discuss the incident. (ECF No. 88-2, PageID.1514; ECF No. 88-5, PageID.1555).

Almost exactly one year later, on January 9, 2019, Prela died. (Death

Certificate, ECF No. 88-10, PageID.1694).  His causes of death were as follows: (a) septic shock, (b) multiorgan failure, and (c) acute cholecystitis.  (*Id.*).

2.     Plaintiffs' Version of Events

The key differences in plaintiffs' version of events as described in Tom's and Kelmendi's depositions are summarized below.

When the officers arrived at the home, Tom answered the door and explained that Liljana had taken all her belongings with her when she left.  (Tom Djonovic Deposition, ECF No. 88-9, PageID.1668-1669).  Meanwhile, Kelmendi was asleep on a living room couch when the officers arrived at the home.  (*Id.*, PageID.1670; ECF No. 88-8, PageID.1619).  After Tom spoke to the officers twice, he woke Kelmendi up and asked him to speak to the officers.  (ECF No. 88-8, PageID.1619; ECF No. 88-9, PageID.1670).

Kelmendi went to the door to speak to the officers.  (ECF No. 88-8, PageID.1619).  He asked if they had a warrant and when they said no, Kelmendi told them to come back once they did.  (*Id.*).  The officers then asked if he knew Liljana and Kelmendi explained that she used to stay there but had left, abandoning Tom and their son.  (*Id.*, PageID.1620).  Kelmendi told the officers that she did not have any belongings left in the home.  (*Id.*).

At that point, Hogan and another officer slammed Kelmendi against the wall near the door.  (*Id.*; ECF No. 88-9, PageID.1672).  This caused Kelmendi to lose

8

consciousness in addition to "excruciating pain." (*Id.*).  When Kelmendi regained consciousness, he was being held down by officers.  (*Id.*, PageID.1620-1621). Kelmendi also saw two officers holding Prela and one attacking him.  (*Id.*, PageID.1620).  Tom saw three officers punching Prela and beating him with a steel baton.  (ECF No. 88-9, PageID.1673-1675, 1677).

Tom directed Kelmendi to go upstairs and see what was going on.  (*Id.*, PageID.1676; ECF No. 88-8, PageID.1621).  Kelmendi "crawled upstairs on [his] knees and hands."  (ECF No. 88-8, PageID.1621).  During this time, Hogan and two other officers pointed their guns at Kelmendi and Bellomo pointed his gun at Tom.  (*Id.*, PageID.1621, 1625; ECF No. 88-9, PageID.1676-1678).  Once the officers left, Kelmendi went to the police station to make a report, but nobody would allow him to do so.  (ECF No. 88-8, PageID.1622-1623, 1641).

Kelmendi returned home before eventually going to the hospital.  (*Id.*, PageID.1623).  Kelmendi and Tom's sister came to the home to care for Prela because he was too afraid to go to the hospital.  (*Id.*; ECF No. 88-9, PageID.1681). Based on pictures taken of Kelmendi's head, Kelmendi determined that he had been pistol-whipped.  (ECF No. 88-8, PageID.1629-1630).  The officers' actions left him with a closed-head injury as well as numerous other injuries.  (*Id.*, PageID.1606-1607, 1634-1638, 1641, 1643-1644).

B.    Relevant Procedural History

This case has been pending in this Court for over three and a half years.  The relevant procedural history is as follows.

On August 28, 2020, plaintiffs filed their initial complaint.  (ECF No. 1). The case was originally assigned to the Honorable Denise Page Hood and the Honorable R. Steven Whalen.  Almost two years later, on April 26, 2022, the case was reassigned from Magistrate Judge Whalen—who had since retired—to the undersigned.  At that time, Judge Hood referred a discrete discovery issue to the undersigned, (ECF No. 40), which was resolved during a telephonic status conference with the attorneys (as plaintiffs were represented at that time).  The undersigned became involved in the case again on August 29, 2023, when Judge Hood referred all pretrial matters excluding dispositive motions.  (ECF No. 62).

At the time of the August 29, 2023 referral, two motions to compel filed by defendants were pending.  (ECF Nos. 60, 61).  On September 15, 2023, the undersigned entered an order granting in part and denying in part these motions, (ECF No. 67), and also entered a show cause order requiring Tom to show in writing by September 29, 2023, that he was the personal representative of the Estate, (ECF No. 68).

In the order resolving the motions to compel, the undersigned noted that defendants had "outline[d] years of discovery related issues that ha[d] only

10

increased following the withdrawal of plaintiffs' counsel." (ECF No. 67, PageID.1217). One of defendants' requests in their motions was for plaintiffs to sign authorizations for the release of their medical records. (*Id.*, PageID.1220). After finding that the request sought relevant discovery and that plaintiffs would not be harmed if they complied, the undersigned ordered plaintiffs to sign "any authorizations that need to be signed." (*Id.*, PageID.1221). Further, defendants raised "valid concerns" about Tom's ability to legally represent the interests of the Estate in this matter. (*Id.*). As such, the undersigned entered the show cause order in order to "ascertain whether he [was] able to legally represent the Estate and, if he [could] do so, whether he [could] represent the Estate while proceeding *pro se*." (*Id.*). The scheduling order was stayed pending the undersigned's decision on whether Tom could represent the Estate. (*Id.*, PageID.1222).

On September 29, 2023, Tom filed a response to the order to show case, to which he attached Prela's will that named him as personal representative and sole beneficiary. (ECF No. 71, PageID.1250-1253). On October 3, 2023, the undersigned vacated the order to show cause, finding that it had been satisfied and that Tom could continue to represent the interests of the Estate either with or without the assistance of counsel. (ECF No. 72). The same day, a scheduling order was entered setting the discovery deadline as February 5, 2024, and the dispositive motion cut-off as March 5, 2024. (ECF No. 73).

On October 10, 2023, defendants moved for reconsideration of the October 3, 2023 order vacating the order to show cause. (ECF No. 75). Then, on October 16, 2023, plaintiffs filed a motion seeking clarification of prior orders. (ECF No. 77). Both of these motions were resolved in an order entered on October 17, 2023. (ECF No. 78). This order provided the clarification sought by plaintiffs, (*id.*, PageID.1394), denied defendants' motion for reconsideration, (*id.*, PageID.1395-1397), and directed that the deposition of Liljana "be conducted via video teleconferencing technology such as Zoom[,]" (*id.*, PageId.1398). Finally, the undersigned noted the following:

> The Court reminds plaintiffs that they have been ordered to comply with defendants' discovery requests and that a party's "*pro se* status, in and of itself, does not entitle[] him to disregard the federal or local rules, or the orders of this court." *Sandweiss Law Ctr., P.C. v. Bunting*, No. 2:07-CV-10099, 2007 WL 1084565, at *1 (E.D. Mich. Apr. 11, 2007). **Plaintiffs are CAUTIONED that they may face sanction[s], up to and including the dismissal of this lawsuit if they continue to refuse to comply with their discovery obligations, including with regard to the deposition of Liljana Djonovic, and orders of the Court. *See* Fed. R. Civ. P. 37(b)(2)(A)(i)–(vi).**

(*Id.*, PageID.1398 (emphasis in original)). Plaintiffs were also directed to the resources available to *pro se* litigants in this district. (*Id.*, PageID.1398-1399).

On November 17, 2023, the case was reassigned from Judge Hood to the Honorable Mark A. Goldsmith. Judge Goldsmith referred all pretrial matters to the undersigned on November 20, 2023. (ECF No. 85). In the months following, the three motions that are currently before the Court were filed and briefed. Each of

12

these motions will be discussed in turn below.

III.    Discussion

A.    Defendants' Motion for Discovery Sanctions (ECF No. 86)

Defendants' first motion requests dismissal or, alternatively, lesser sanctions for plaintiffs' repeated refusals to sign authorizations for the release of medical records despite defendants' extensive efforts and court orders directing them to do so.  (ECF No. 86).  In response, plaintiffs claim that they have provided signed authorizations many times; they also attach various authorizations.  (ECF No. 91). In reply, defendants point out that many of the authorizations attached by plaintiffs were not actually signed.  (ECF No. 92).  Plaintiffs' sur-reply, (ECF No. 97), will not be considered as they did not first move for leave to file a sur-reply and they have previously been warned that a party must seek leave before filing a sur-reply, *see* ECF No. 78, PageID.1395.

1.    Legal Standard

A court may dismiss a plaintiff's complaint as a sanction for violating discovery rules or court orders.  Fed. R. Civ. P. 37(b)-(c), 41(b).  A court also has the inherent authority to sanction bad faith conduct, "derive[d] from its equitable power to control the litigants before it and to guarantee the integrity of the court and its proceedings."  *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002).  "A primary aspect of [the court's inherent

13

authority] is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991).

Although dismissal is a severe sanction, it is well within a court's discretion. *Bradley J. Delp Revocable Trust v. MSJMR 2008 Irrevocable Trust*, 665 F. App'x 514, 520 (6th Cir. 2016).  Four factors guide whether dismissal is proper: (1) whether the party's conduct was due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered. *Id.* at 520-21.  These factors are the same whether proceeding under Rule 37(b), Rule 41(b), or the court's inherent authority.  *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1094 n.1 (6th Cir. 1994).

While *pro se* litigants are generally entitled to a degree of leniency, "pro se filings do not serve as an impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets."  *Porton v. SP One, Ltd.*, No. 6:15-cv-566–Orl-40KRS, 2015 WL 1648893, at *2 (M.D. Fla. Apr. 13, 2015) (internal quotation marks omitted).

2.      Analysis

a.      History of Plaintiffs' Refusal to Sign Authorizations

Defendants provide a detailed outline of their efforts to obtain signed

authorization from plaintiffs dating back to April 5, 2022.  (ECF No. 86,

PageID.1424).  Given that the undersigned ruled on defendants' motion to compel

the authorizations on September 15, 2023, the defendants' summarization of what

occurred from that point forward will be set forth.

22.    This Honorable Court in its Order at **ECF No. 67** granted
Defendants Motion compelling these authorizations to be provided.
However, this Honorable Court instructed the parties to follow
instructions with regard to the service of authorizations: "Defendants
are ORDERED to mail, return receipt requested, any authorizations that
need to be signed to plaintiffs within seven (7) days of entry of this
order.  Plaintiffs are ORDERED to mail, return receipt requested, the
signed authorizations to defendants within seven (7) days of their
receipt.  The parties are also ORDERED to file the return receipts on
the docket to enable the Court to verify that its instructions have been
followed."

23.    These authorizations were also the subject of a Motion to Compel
Discovery in the Companion Case at *United States District Court Case*

No. 2:22-cv12393, ECF No. 38.[5]   In this companion case, this Honorable Court also granted Defendants Motion to Compel by Order at *ECF No. 43* (but did not require the re-service thereof).  In its Order at *ECF No. 43,* dated 8/24/2023, this Honorable Court held "The Court finds that defendants have not been dilatory in seeking discovery and that plaintiffs have not been responsive to defendants' request for authorizations. . ." then cautioned the Plaintiffs about their obligation to engage in discovery.

24.   In the Companion Case at *United States District Court Case No. 2:22-cv12393*, on or about 9/18/2023, Plaintiffs filed their "Reply to Defendants' Motion to Compel Discovery and Disclosures and Extend the Scheduling Order" at *ECF No. 46*.   On or about 9/19/2023, Defendants filed a Motion to Strike *ECF No. 46 (at ECF No. 47)*, urging that: "*ECF 46 is also untimely under LR 7.1 where Defendants' filed their Motion to Compel Discovery and Disclosures and to Extend the Scheduling Order (ECF 38) on or about 7/27/2023, duplicative of Plaintiffs' already filed objections at ECF 40, and moot where this Honorable Court already entered its Order on said Motion at ECF 43 on or about 8/24/2023 – long after the time for Plaintiff to file a Response had lapsed.*"   Defendants also brought it to this Court's attention, in *ECF No. 47*, that "*It should be noted however, that despite repeated requests since this Court entered its Order at ECF 43, Plaintiffs' . . . have failed to provide signed authorizations to the office of Defense Counsel as ordered in both this case and in Case 2:20-cv-12354-DPH-KGA, ECF 67.*"

25.   In the Companion Case at *United States District Court Case No.*

---

[5] *Djonovic v. Septer*, No. 22-12393 (E.D. Mich., Goldsmith, J) is a companion case to the instant case.  In *Djonovic*, the plaintiffs (Tom and Kelmendi) alleged that Shelby Township and others began retaliating against them after they filed the instant lawsuit.  *See* ECF No. 1.  The case was referred to the undersigned for all pretrial matters.  (ECF No. 51).  The defendants filed a motion to dismiss, (ECF No. 37), that the undersigned recommended granting, (ECF No. 53).  The Report and Recommendation was adopted to the extent that the undersigned recommended dismissal with prejudice of the federal claims but rejected to the extent that it recommended dismissal with prejudice, rather than *without* prejudice, of the state law claims.  (ECF No. 62).  Plaintiffs appealed and that appeal is currently pending before the Sixth Circuit.  (ECF No. 64).

*2:22-cv12393*, Plaintiffs then-filed a Notice of Correction at *ECF No. 48* indicating that *ECF No. 46* was filed in the wrong case, and meant to be filed in the instant case.

26.    Thereafter, Plaintiffs filed their "Reply to Defendants' Motion to Compel Discovery and Disclosures and Extend the Scheduling Order" in this case at **ECF No. 69**.   Therein, Plaintiffs claimed that authorizations were provided – but attached to this "Reply" only a single, unsigned, authorization.

27.    On 9/26/2023, Defendants filed a Motion to Strike Plaintiffs' filing at **ECF No. 69** (at **ECF No. 70**).  Therein, Defendants argued ". . . *ECF 69 is untimely under LR 7.1 where Defendants' filed their Motion to Compel Discovery and Disclosures and to Extend the Scheduling Order (**ECF 61**) on or about 8/17/2023, duplicative of Plaintiffs' already filed objections at **ECF 65**, and moot where this Honorable Court already entered its Order on said Motion at **ECF 67** on or about 9/15/2023 – long after the time for Plaintiff to file a Response had lapsed.  It should be noted however, that despite repeated requests since this Court entered its Order at ECF 43 in USDC Case No. 2:22-cv-12393 and **ECF 67** in this case, Plaintiffs have failed to provide signed authorizations to the office of Defense Counsel as ordered in both cases per the afore-mentioned docket numbers.*"  At **ECF No. 71**, on September 29, 2023, Plaintiffs filed a Response to the Order to Show Cause, which in part was Plaintiffs' Response to this Court's Order at **ECF No. 67**.  In **ECF No. 71**, Plaintiff claimed they had complied with the Court's Order to provide authorizations and allegedly attached those authorizations as proofs of the same.  The only problem with this being that the authorizations attached to **ECF No. 71** were never signed and provided to Defense Counsel; In fact, even the versions filed with this Court at **ECF No. 71, PgID 1254-1325** are unsigned!  Plaintiffs filed (a second) Response at ECF No. 74, which argued that the authorizations were provided and filed into the record on September 29, 2023 – in reference to the (albeit unsigned!) authorizations attached at **ECF No. 71, PgID 1254-1325**.  Defendant filed their Reply at **ECF No. 76**, urging that the Plaintiffs' filings should be stricken and bringing to this Court's attention the following at FN1: "Therein [*in reference to **ECF No. 67***], as set forth in Defendants' **ECF No. 75**, this Honorable Court ordered Defendants to serve authorizations on Plaintiffs within 7 days via certified mail with

return receipts and Plaintiffs to return signed authorizations within 7 days of receipt, via certified mail with return receipts.  Unfortunately, in clerical error, the authorizations were emailed and mailed on 9/7/2023 to Plaintiffs as a result of the Order compelling the same authorizations in a companion case between the parties (*United States District Court Case No. 2:22-cv12393, ECF No. 43*) and a follow-up email was sent to Plaintiffs regarding the authorizations on 9/19/2023 as a result of this Court's Order at **ECF No. 67**, but was unfortunately not mailed via certified mail return receipt requested until 10/10/2023. Accordingly, return receipts will be filed by Defendants, albeit late. That being said, the authorizations and correspondence were received and acknowledged by Plaintiffs who still – after this Court's Order at **ECF No. 67** – refused to sign authorizations on 10/2/2023. See Ex. 1 [*referring to **ECF No. 76-1***], the Response to this Motion to Strike at **ECF No. 74**, and the attachments to Plaintiffs' Response to the Show Cause Order at **ECF No. 71**."

28.     In **ECF No. 78**, this Honorable Court resolved many filings by the Parties, but ultimately cautioned Plaintiffs: "*The Court reminds plaintiffs that they have been ordered to comply with defendants' discovery requests and that a party's "pro se status, in and of itself, does not entitle[] him to disregard the federal or local rules, or the orders of this court." Sandweiss Law Ctr., P.C. v. Bunting, No. 2:07-CV-10099, 2007 WL 1084565, at \*1 (E.D. Mich. Apr. 11, 2007). Plaintiffs are CAUTIONED that they may face sanction, up to and including the dismissal of this lawsuit if they continue to refuse to comply with their discovery obligations, . . . and orders of the Court. See Fed. R. Civ. P. 37(b)(2)(A)(i)–(vi)."*  Thereafter, Plaintiffs filed a Motion for Reconsideration (titled otherwise) at **ECF No. 79**, this Honorable Court denied that Motion at **ECF No. 80** and Plaintiffs filed an Objection at **ECF No. 81**, and this Honorable Court denied that Objection at **ECF No. 84 (on November 15, 2023).**

29.     The authorizations at issue have been served multiple times to Plaintiffs as part of discovery in both the above captioned case and the companion case at *USDC Case No. 2:22-cv-12393*, via email (various dates, including on or about 9/7/2023 as shown at **ECF No. 76-1**), first class mail (various dates, including on or about 8/16/2023 with **ECF No. 61** as shown by the Certificate of Service at **ECF No. 61, PgID 800** and again, on 9/7/2023 as shown at **Case 2:20-cv-12354, ECF No. 76-**

**1**) and most recently, on 10/10/2023 (according to "the mailbox rule"), via certified mail with return receipt requested as required by this Honorable Court's Order at **ECF No. 67**, as shown in **Exhibit 1 hereto**.

30.    Plaintiffs objected via email on October 2, 2023, as shown at **ECF No. 76-1**, stating that "*I'm not signing clinics, or hospitals, doctors that Mr. Prela Djonovic my father has not attended or been. You have all hospital records.*" Plaintiffs continue to object through their filings with this Court, herein and in the Companion Case at 2:22-cv-12393.

31.    Despite having been ordered twice in **ECF No. 43** in the Companion Case at *USDC Case No. 2:22-cv-12393* and at **ECF No. 67** in this case and despite being cautioned twice (in the Companion Case at *USDC Case No. 2:22-cv12393, ECF No. 43* and in this case at **ECF No. 78**) about their obligation to provide discovery, Plaintiffs have not provided authorizations.

32.    Accordingly, Defendants prepared to file a Motion for Sanctions and /or to Compel the authorizations – but in mid-November 2023 – Counsel realized that the authorizations served (per "the mailbox rule") on 10/10/2023 via certified mail, return receipt requested, with receipts shown at **Exhibit 1** was still, according to the USPS website, "in transit" to be returned to sender Defense Counsel after no recipient was available on 10/11/2023, when a notice was left for Plaintiffs to schedule delivery thereof, and the item was unclaimed as of 10/27/2023. **See Exhibit 2**.

33.    Accordingly, Defense Counsel arranged for personal service of said authorizations, but they were not able to be personally served on various dates in mid-late November 2023 and instead were posted, according to the affidavit of Court Officers provided in December 2023 and attached hereto at **Exhibit 3.**

34.    This being so, when the deposition of Tom Djonovic was finally taken on December 18, 2023, and Plaintiffs John Kelmendi and Tom Djonovic appeared for said deposition in person, Counsel for Defendants presented them with the unsigned authorizations that this Court had ordered them to sign. Still, each of the Plaintiffs refused to sign the authorizations falsely claiming that they already had done so.

**See Exhibit 4 (Deposition Excerpt).**

(ECF No. 86, PageID.1431-1438).

### b.      Application

Plaintiffs' steadfast refusal to provide signed authorizations in the face of multiple requests from defendants and the Court's orders can only be taken as bad faith. *See Bass v. Jostens, Inc.*, 71 F.3d 237, 243 (6th Cir. 1995) ("[W]here a party demonstrates bad faith by failing to meet dates set by the Court for compliance with discovery, despite being warned about possible sanctions, the Court does not abuse its discretion in finding that such 'callous disregard' of discovery orders justifies dismissal."); *O'Dell v. Kelly Servs., Inc.*, 334 F.R.D. 486, 491 (E.D. Mich. 2020) (finding bad faith when the plaintiff "repeatedly disregarded discovery deadlines, even after those dates were extended"); *Roney v. Starwood Hotels & Resorts Worldwide, Inc.*, 236 F.R.D. 346, 348 (E.D. Mich. 2006) (finding bad faith when the plaintiff repeatedly violated the court's orders and discovery rules and never produced documents).  To the extent that plaintiffs contend they have signed all the authorizations, their own response belies this contention.  Attached to the response are numerous authorizations that are *unsigned* with handwritten notes such as, "Prela Djonovic never used this medical service."  (ECF No. 91-1, PageID.1803 (capitalization modified)).  When granting defendants' motion to compel signed authorizations, the undersigned noted that plaintiffs needed to sign

20

all authorizations requested by defendants, explaining that plaintiffs would "not be harmed if they [were] compelled to sign releases for medical providers who do not have any records to produce."  (ECF No. 67, PageID.1221).

Moreover, plaintiffs' bad-faith refusal to provide discovery prejudices defendants in that they are unable to defend against plaintiffs' claims without the information that would be revealed by plaintiffs' signed authorizations.  *See Vickers v. Mt. Morris Twp. Police Dep't*, No. 19-12250, 2022 WL 4820423, at *3 (E.D. Mich. Aug. 17, 2022) ("The discovery sought by defendants would go to the core of plaintiffs' claims of excessive force, intentional infliction of physical and emotional harm, false imprisonment with inadequate medical care, and pain and suffering."), *report and recommendation adopted sub nom. Vickers v. Mt. Morris Twp.*, 2022 WL 4715589 (E.D. Mich. Sept. 30, 2022).  And as outlined above, plaintiffs have been warned by the Court that refusal to participate in discovery could lead to sanctions including dismissal.  *Bradley J. Delp Revocable Trust*, 665 F. App'x at 520-21.

Furthermore, the undersigned has considered whether alternative, lesser sanctions are warranted, including those argued by defendants in the alternative, and finds that no other sanction would "protect [the] integrity of the judicial process."  *Id.* at 524; *see also Roney*, 236 F.R.D. at 349 ("[D]ismissal, as opposed to a lesser sanction, is warranted in this case based on [the p]laintiff's pattern of

21

discovery abuse, which has not been deterred by court orders or the imposition of a monetary sanction."). Given plaintiffs' repeated defiance of court orders and refusal to comply with the discovery process, dismissal with prejudice is the only sanction that will protect the integrity of the judicial process here. Thus, the undersigned recommends dismissal as a sanction for plaintiffs' violation of a court order and refusal to fully participate in the discovery process.

B.     Defendants' Motion to Dismiss and for Summary Judgment (ECF No. 88)

1.     Legal Standards

While the undersigned believes that this case should be dismissed as a discovery sanction, the merits of defendants' motion to dismiss and for summary judgment will be addressed below for the sake of completeness.

a.     Motions to Dismiss

"A motion to dismiss for lack of standing is properly characterized as a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Fishon v. Mars Petcare US, Inc.*, 501 F. Supp. 555, 562 (M.D. Tenn. 2020). "Fed. R. Civ. P. 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Id.* Here,

defendants are making a factual attack.

b.      Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' "  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that plaintiffs are now *pro se* does not reduce their obligations

23

under Rule 56.  Rather, "liberal treatment of pro se pleadings does not require

lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F.

App'x 338, 344 (6th Cir. 2006).  Additionally, "once a case has progressed to the

summary judgment stage, as is true here, the liberal pleading standards under the

Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th

Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*,

407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

### 2.    Analysis

#### a.    Dismissal of the Estate's Claims

Defendants argue that Tom lacks standing to bring claims on behalf of the

Estate because he has not produced nor even pled that he possesses "letters of

personal representative," which are required under Michigan law to sue on behalf

of an estate.  (ECF No. 88, PageID.1489-1450 (citing MCL 700.3103)).

Defendants have previously raised this issue in a discovery motion, and when

ruling on a motion for reconsideration, the undersigned explained that

> [h]owever well-taken defendants' arguments as to the ability of Tom to
> represent the Estate may be, they should be raised in a separately filed
> motion to dismiss.  If defendants file such a motion, plaintiffs will be
> given an opportunity to file a response and the district court will be
> better equipped to rule on the motion.

(ECF No. 78, PageID.1397).  The undersigned also noted that at that time,

defendants had not cited any federal caselaw supporting their position.  (*Id.*,

24

PageID.1396).  Defendants have remedied these issues by properly raising the issue in a motion to dismiss and citing federal caselaw in their motion.

In *Zimmerman v. Labish*, another magistrate judge in this district considered whether a father could bring constitutional claims under § 1983 on behalf of his deceased son.  No. 2:22-cv-12338, 2023 WL 4062836, at *6 (E.D. Mich. May 12, 2023), *report and recommendation adopted*, 2023 WL 6367680 (E.D. Mich. Sept. 29, 2023).  While the plaintiffs' asserted that the father had been appointed personal representative of the son's estate, "they neither attach[ed], nor cite[d] proof of, this appointment."  *Id.*  Additionally, it was "not even apparent that a probate estate has been opened for [the son]."  *Id.*  Ultimately, it was recommended that any claims that the defendants violated the son's constitutional rights should be dismissed.  *Id.*

This case is analogous to *Zimmerman*.  While plaintiffs have produced Prela's will, they have not provided the Court with evidence that Tom has been appointed personal representative of the Estate by a court or even that a probate case has ever been opened.  Further, Tom refused to answer any questions related to the Estate and his representation of it at his deposition.  Under the circumstances, the Court should dismiss any claims that defendants violated Prela's constitutional rights because Tom has not established that he has standing to pursue these claims.

25

b.      Summary Judgment – Unlawful Entry Claim

Turning next to plaintiffs' unlawful entry claim,

[t]he Fourth Amendment protects people from unreasonable governmental searches and seizures by requiring a warrant supported by probable cause.  Yet the Fourth Amendment permits warrantless searches with valid consent.  To be valid, the consent must be voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion.

*Little v. Saginaw*, 674 F. Supp. 3d 376, 381-82 (E.D. Mich. May 19, 2023)

(internal quotation marks and citations omitted).  Moreover,

the Constitution is not offended by the warrantless entry of a home when consent to search it is given by someone with common authority over the premises.  Common authority "rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched."

*United States v. Clay*, 1 F. Supp. 3d 688, 691 (E.D. Ky. 2014) (quoting *United States v. Hunyady*, 409 F.3d 297, 303 (6th Cir. 2005)).  Additionally,

[e]ven if a third party does not possess actual common authority over the area that was searched, the Fourth Amendment is not violated if the police relied in good faith on a third party's apparent authority to consent to the search.  Apparent authority is judged by an objective standard.  A search consented to by a third party without actual authority over the premises is nonetheless valid if the officers reasonably could conclude from the facts available that the third party had authority to consent to the search.

*United States v. Gillis*, 358 F.3d 386, 390-91 (6th Cir. 2004).

To the extent the Fourth Amendment claim is asserted on behalf of the

Estate, it should be dismissed for lack of standing.  Further, the claim also fails on the merits.

In keeping with "guidance from the Supreme Court, the Sixth Circuit has considered several cases concerning the apparent authority of a cohabitating girlfriend to consent to a search of her boyfriend's apartment, most of which have been decided in favor of the police." *Clay*, 1 F. Supp. 3d at 692.  Here, Liljana's apparent authority was even stronger than that of a cohabitating girlfriend.  At the time of the incident, she was legally married to Tom and the mother of the couple's minor child, both of whom were present in the home during her and the officers' entry.  Additionally, she informed the officers that she had been gone for less than a day and did not have a new residence.  Liljana also presented state issued identification that listed the home as her legal address.  Under these facts, the officers could reasonably believe that Liljana had authority to consent to their entry into the home.  No reasonable juror could find otherwise under the facts in the record.  Defendants are therefore entitled to summary judgment on this claim.

c.      Summary Judgment – Excessive Force and/or Battery Claims

Under Michigan law, "[a] battery is 'an unintentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person.' "  *Grawey v. Drury*, 567 F.3d 302, 315 (6th Cir. 2009) (quoting *People v. Nickens*, 470 Mich. 622, 628 (2004)).

27

> Generally, under Michigan law a police officer may use such force as is reasonably necessary to perform his official duties such as, for example, making an arrest or subduing a person suspected of committing a crime. If a police officer uses force that is objectively reasonable under the circumstances, the officer's actions are "justified" and he does not commit an assault and battery. However, if a police officer uses excessive force or more force than is reasonably necessary, his conduct is not justified (not objectively reasonable) and he may be individually liable for assault and battery.

*Moher v. United States*, 875 F. Supp. 2d 739, 760 (W.D. Mich. 2012).

Once again, to the extent that an excessive force and/or battery claim is being asserted on behalf of the Estate, it should be dismissed for lack of standing. Kelmendi's claim against Hogan, however, must be considered on the merits.

As to Kelmendi's claim, the officers' depositions and the audio recordings of the incident support defendants' contention that Hogan did not use excessive force against Kelmendi. For example, Kelmendi can be heard on the recordings claiming that Hogan pushed him. He does not, however, ever say that Hogan slammed him against a wall or that he lost consciousness. The audio recordings also do not include mention Prela being assaulted whatsoever.

The only evidence in support of plaintiffs' claim that Kelmendi was assaulted is Kelmendi's and Tom's self-serving testimony at their depositions. While ordinarily the evidence is construed in the light most favorable to the nonmoving party on a motion for summary judgment, *Coble v. City of White House*, 634 F.3d 865, 868 (6th Cir. 2011), where there are conflicting stories, "one

28

of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment," *Scott v. Harris*, 550 U.S. 372, 380 (2007). A claim that is "blatantly contradicted by objective evidence in the record . . . fails to create a genuine issue of material fact for trial." *Coble*, 634 F.3d at 869. Here, even construing the evidence in the light most favorable to plaintiffs would not allow a reasonable trier of fact to accept their story given the other record evidence, particularly the audio recordings of the incident. Accordingly, plaintiffs have failed to create a genuine issue of material fact for trial as to whether Hogan used excessive force against Kelmendi. Defendants are entitled to summary judgment on this claim.

> d.   Summary Judgment – *Monell* Claim

Liability under § 1983 must be based on more than merely the right to control employees. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978). Only when the acts of individual employees represent a municipal custom or policy can a municipal defendant be held liable for the underlying acts. *Monell*, 436 U.S. at 690-92. Such a claim can be made where a plaintiff alleges one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the

29

existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Id.* (citation omitted).

Count II of the amended complaint alleges that plaintiffs' deprivations were caused by Shelby Township's "policy, practice, and/or custom of unlawfully entering the homes and using excessive force on citizens." (ECF No. 8, PageID.42). Defendants argue that this allegation is vague and conclusory, and contend that Shelby Township has proper policies and adequate training in place governing peace officer detail, entry, search and seizure, and use of force. (ECF No. 88, PageID.1500-1501). This contention is supported by the depositions of O'Neal, Bellomo, Hogan, and Haughee. (Albert O'Neal Deposition, ECF No. 88-4, PageID.1540; ECF No. 88-5, PageID.1558; ECF No. 88-6, PageID.1567-1568, 1572-1573; Jordan Haughee Deposition, ECF No. 88-7, PageID.1599).

The undersigned need not address whether plaintiffs' claim of a "policy, practice, and/or custom of unlawfully entering the homes and using excessive force on citizens[,]" (ECF No. 8, PageID.42), is vague and/or conclusory, because at the summary judgment stage, the parties must use evidence to establish whether there is a genuine issue of material fact that warrants trial. *See Stansberry*, 651 F.3d at 486. The evidence proffered by defendants reflects that Shelby Township policy and training promotes de-escalation and the entry of private property only with

permission.  (ECF Nos. 88-4, PageID.1540; 88-5, PageID.1558; 88-6, PageID.1567-1568, 1572-1573; 88-7, PageID.1599).  Defendants' proffer shifts the burden to the nonmoving parties, plaintiffs, to set forth specific facts in support of their allegations.  *Wrench LLC*, 256 F.3d at 453; *Zenith Radio Corp.*, 475 U.S. at 587.

Plaintiffs' response to defendants' motion does not address their defense of plaintiffs' *Monell* claim.  Plaintiffs have offered no facts to support or flesh out their allegation of Shelby Township's encouragement of officers to enter peoples' homes unlawfully or use excessive force on its citizens.  They have thus not met their burden to show an issue for trial at the summary judgment stage.  For this reason, Shelby Township is entitled to summary judgment on plaintiffs' *Monell* claim.

C.     Defendants' Motion to Strike Plaintiffs' Response (ECF No. 95)

Finally, alongside their motion to dismiss and motion for summary judgment, (ECF No. 88), defendants filed a motion for leave to file exhibits to that motion in the traditional manner, (ECF No. 89).  Defendants sought to file video and audio exhibits to their dispositive motion.  (*Id.*).  The motion for leave was granted by text-only order on March 7, 2024, and the exhibits have been considered by the undersigned in making the above findings.

Plaintiffs then filed a response to defendants' motion for leave to file

exhibits, suggesting that the exhibits had not been produced in discovery and that they may have been tampered with or edited in some fashion before being provided to the Court. (ECF No. 94). Defendants now move to strike plaintiffs' response to their motion for leave to file exhibits. (ECF No. 95).

Under Federal Rule of Civil Procedure 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter . . . on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." However, "[m]otions to strike are viewed with disfavor and are not frequently granted." *Operating Engineers Local 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015).

The undersigned recommends denying defendants' motion to strike as moot. Defendants' motion for leave to file exhibits was granted and the exhibits have been considered; therefore, the remedy sought by that motion was granted. Plaintiffs' response, suggesting that the exhibits may have been altered, provides no evidentiary basis for such a conclusion and does not warrant denial of defendants' motion to submit the exhibits. Further, defendants say that their exhibits were identified in initial disclosures, referenced in written discovery responses, and shown to plaintiffs during their depositions, but never requested by plaintiffs through the discovery process. (*Id.*, PageID.1834-1835).

Although plaintiffs do not raise any credible reason for denying defendants' motion for leave to file their exhibits, plaintiffs' response need not be stricken. Defendants' motion was granted, and their exhibits have been considered by the undersigned.  Therefore, defendants' motion to strike plaintiffs' response should be denied as moot.

IV.    Conclusion

For the reasons stated above, it is RECOMMENDED that defendants' first motion, (ECF No. 86), be GRANTED to the extent that it requests dismissal as a discovery sanction and defendants' second motion, (ECF No. 88), be either DENIED AS MOOT or GRANTED.  Additionally, it is recommended that defendants' third motion, (ECF No. 95), be DENIED AS MOOT.  If these recommendations are adopted, this case will be dismissed in its entirety.

Dated: April 30, 2024                          s/Kimberly G. Altman
Detroit, Michigan                              KIMBERLY G. ALTMAN
                                               United States Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

33

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Isaac v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 30, 2024.

s/Carolyn M. Ciesla
CAROLYN M. CIESLA
Case Manager
